**Bonnie RATEREE, et al., Plaintiffs,**

**v.**

**Damon ROCKETT, et al., Defendants.**

**No. 85 C 4700.**

United States District Court,
N.D. Illinois, E.D.

April 19, 1988.
Supplemental Opinion May 4, 1988.

Alan M. Freedman, Bruce H. Bornstein, Freedman & Bornstein, Jerry B. Kurz, Chicago, Ill., for plaintiffs.

William J. Holloway, Thomas S. Malciauskas, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's August 24, 1987 opinion (668 F.Supp. 1155) held plaintiffs entitled to an award of attorney's fees as "prevailing parties" under 42 U.S.C. § 1988 ("Section 1988") by virtue of their judgment obtained against the City of Harvey ("City") via Fed.R.Civ.P. ("Rule") 68. Now the parties have provided extensive submissions as to plaintiffs' proposed quantification of the award. For the reasons explained in this opinion, the final act in the drama is not yet played out—more lines are needed. But a number of the splintered issues posed by the parties can be dealt with briefly here.

First, both aspects of the familiar lodestar calculation—hours and hourly rates—need refinement. They will be touched on in turn.

As for the reasonableness of the time spent by plaintiffs' counsel:

1. City rightly cavils at the duplication of time reflected in the time records submitted with plaintiffs' motion. Fully 148 hours are the product of the tandem involvement of plaintiffs' two lawyers in such things as deposition attendance, transcript review, client conferences, review of motions and general discussion. Business magnate Jay Pritzker has been quoted as having made the wry comment on the current fashion in legal representation:

> Lawyers are like nuns: They travel in pairs.

Although courts do not police such developing patterns of conduct within the legal profession in general terms, when it comes to fee shifting courts do have the duty to apply principles of reasonableness. This Court has reviewed the records in detail and, though absolute precision is not possible, it finds 42 hours should be disallowed for duplication of effort not fairly chargeable to an adversary under Section 1988.

2. Excessive time also appears to have been devoted by plaintiffs' lawyers to deposition review even apart from the just-discussed duplication factor, and plaintiffs' lawyers also appear not to have cut back on the deposition hours themselves for time spent in questioning deponents on the substantive issues on which time is not properly chargeable (and on which the lawyers *have* deleted the substantive time expenditures). Once more this Court cannot, without undue expenditure of everyone's time (including its own), arrive at an exactly correct number. However, its best judgment from a detailed review of the entries is to eliminate another 29 hours in the aggregate.

These items, together with the four-hour reduction acknowledged as called for at Plaintiffs' R.Mem. 15, add up to a total reduction of 75 hours from the 489 hours

requested, leaving net chargeable time of 414 hours.[1]

■ As to hourly rates, this Court simply has not received adequate information on the subject. Certainly one source of relevant evidence is the historical rates plaintiffs' lawyers have themselves charged to paying clients during the three years this lawsuit was active (1985 through 1987).[2] On that score what Plaintiffs' Petition ¶ 1 says is this:

> 1. The petition seeks fees and costs for work performed by both attorneys in the law firm of Freedman & Bornstein, P.C.: Alan M. Freedman (AF) and Bruce H. Bornstein (BB). Mr. Freedman's billing rate durign [sic] the time period of this fee petition was $125.00 per hour; and Mr. Bornstein's was $125.00 per hour.

Does that mean $125 was the rate for each lawyer throughout the three years? How much of the lawyers' time was *actually* billed out and paid at that rate? It may well be that the $125 rate will prove to be the right one for each lawyer, but more input is called for.

Also on the subject of rates, this Court has recently had occasion to write at some length in *Fleming v. County of Kane*, 686 F.Supp. 1264 (N.D.Ill.1988). Some parts of the discussion there have potential relevance here.[3]

So much, then, for the factors bearing on the lodestar calculation. One last question bears mention at this stage: whether that lodestar product obtained by multiplying hours (414 in this instance) by the reasonable rates[4] does in fact represent the approvable reasonable fee. Though *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) has made it clear that plaintiffs' actual recovery does not of itself delimit the fee award, our Court of Appeals has also looked at contingent fee arrangements as a strong clue to the market test for the lawyer's services and hence as relevant in gauging the reasonableness of the fees claimed (see *Hagge v. Bauer*, 827 F.2d 101, 110–12 (7th Cir. 1987) ("Our latest decisions have advanced the notion that the contingent fee arrangement should carry considerable evidentiary significance in ascertaining a reasonable fee award," *id.* at 111)).

In this instance plaintiffs entered into retainer contracts with their lawyers, providing for fees "on the basis of 33.50% of whatever amount may be recovered therefrom by settlement, or 40% after the pretrial order has been prepared or statutory attorneys' fees are awarded by the court or settlement" (City's Response Ex. D). Fee awards go to the client and not the lawyer,

---

1. This Court has reviewed and rejected City's other attacks on plaintiffs' petition, though they do have some arguable force. For example, City complains the meetings between plaintiffs and their lawyers were overly frequent and overly extended (apart from the presence of both plaintiffs' lawyers at several meetings, a matter already taken into account to some extent). But studies have repeatedly shown the greatest source of client dissatisfaction with litigation lawyers is *inadequate* communication—the failure to keep clients informed about what's happening in the lawsuit. This Court cannot and will not second guess what the records reflect here, though some small reduction might arguably be thought justifiable. Nor will any writeoff be made for the lawyers' litigation-related meetings with persons other than plaintiffs, or for the other miscellaneous challenges voiced by City.

2. Plaintiffs have also tendered an affidavit by Legal Assistance Foundation supervising attorney Richard Jay Hess as to the rates sought by that agency's lawyers in fee-award cases. That is surely useful, but lawyers are not necessarily fungible, and direct evidence as to the specific lawyers involved in a case would seem an essential part of the proof (though not of course conclusive) as to what rate was reasonable for their services in free market terms. It is also worth noting City's lawyers—apparently possessed of experience comparable to or greater than that of plaintiffs' lawyers—charge substantially lower hourly rates. But that may be, as plaintiffs suggest, because every tick of the meter is paid promptly and without scrutiny of the services rendered to that law firm's clients.

3. *See Fleming*, 686 F.Supp. at 1272–76.

4. No ultimate opinion is expressed at this point on that subject. Nor is any view expressed on the question, dealt with at some length in *Fleming*, at 1272–74 and cases cited there, whether the current billing rates should be applied across the board as a convenient surrogate for historical rates plus a delay factor.

so any such calculation involves a grossing up of the amount—that is, the "amount recovered therefrom" (just as in the garden variety of contingent arrangements where an award of attorney's fees is not separately made) speaks of the total amount the *defendant* must pay, of which amount the lawyer gets the agreed-upon percentage.[5]

In this case, a 40% fee[6] where the net recovery after fees is $71,000 would be ⅔ (40/60) of $71,000, or $47,333 (in that way the clients' *gross* recovery would be $118,333, 40% of which ($47,333) would go to the lawyers). That amount looks to be very much within the range of the probable lodestar amount.

### Conclusion

This dispute has to be in the home stretch now. Plaintiffs' counsel are directed to provide their supplemental response dealing with the open issues identified in this opinion on or before April 29, 1988 (and City's counsel have leave to do the same within the identical time frame if they wish to submit anything further). This case is set for a status hearing May 6, 1988 at 9 a.m., either for final ruling or to see what remains to be done.

### SUPPLEMENTAL OPINION

This Court's August 24, 1987 opinion ("Opinion 1," 668 F.Supp. 1155) determined plaintiffs were entitled to an attorney's fee award as "prevailing parties" under 42 U.S.C. § 1988 ("Section 1988") as a result of their judgment obtained against the City of Harvey ("City") under Fed.R.Civ.P. ("Rule") 68. Then on April 19, 1988 "Opinion 2" resolved some but not all the issues bearing on the amount of that fee award. In accordance with Opinion 2's directive, each side has now submitted a supplemental memorandum bearing on the remaining open questions, and this third opinion deals with those matters.

### Hourly Rate

■ Plaintiffs' counsel have now disclaimed any past experience whatever in charging on an hourly basis for their services during the relevant time period (Plaintiffs' Supp.Resp. 1, footnote omitted):

> The attorneys during the course of this litigation have had no fee paying clients paying them any fee on an hourly basis, either for civil rights litigation or any other type of legal work practiced by this firm. The clients represented by this law firm are in no financial position to pay any money on an hourly basis, so to charge an hourly rate would not only be unethical but also irrational, as the clients would no doubt hire attorneys who did not have fee contracts indicating they would be responsible for payment of attorneys fees on an hourly rate.

This Court had understandably been misled in that respect by plaintiffs' original submission seeking fees, which had said in seemingly unmistakable terms (Petition ¶ 1, emphasis added):

> The petition seeks fees and costs for work performed by both attorneys in the law firm of Freedman & Bornstein, P.C.: Alan M. Freedman (AF) and Bruce H. Bornstein (BB). Mr. Freedman's *billing rate* durign [sic] the time period of this fee petition was $125.00 per hour; and Mr. Bornstein's was $125.00 per hour.

However, that quite misleading statement as to "billing rate"—though certainly bothersome—does not call for such a punitive judicial reaction as either applying less than a reasonable rate to the lawyers' services, or even denying the petition altogether.

Accordingly this Court is left to determine a reasonable hourly rate for the services of plaintiffs' lawyers without the benefit of what figure the marketplace has set for those services. Nonetheless, defendants offer nothing except an expression of their doubts as to the $125–per–hour figure, while plaintiffs have tendered evidence

---

**5.** None of the reported cases this Court has encountered seems to have focused on this factor (see, e.g., *Hagge*, 827 F.2d at 110–11).

**6.** Given the stage at which the Rule 68 offer and resulting judgment transpired, 40% rather than 33.5% is the applicable rate.

supporting that number. Plaintiffs have also invoked this Court's 1983 opinion in *Strama v. Peterson*, 561 F.Supp. 997. Though the curricula vitae of plaintiffs' counsel do not match in quality that of the plaintiffs' lawyer in *Strama*,[1] as described in Appendix A to the *Strama* opinion (561 F.Supp. at 1002–03), one of the lawyers here (Alan Freedman) has had substantially more years in the practice of law than the *Strama* lawyer had during the pendency of that case, while the other (Bruce Bornstein) has had a bit more time in the practice than the *Strama* lawyer had at the corresponding time periods in that litigation. Moreover, the passage of time since *Strama* has inflated the level of lawyers' fees still further, and this Court now has no predicate for rejecting the confirmatory evidence of the Richard Jay Hess affidavit, which could arguably call for an hourly figure in excess of $125 (Opinion 2 at 672 n. 2). In that respect, Plaintiffs' Supp.Resp. 3–4 correctly points out the most relevant experience factor is in like-kind litigation.

In sum, on the evidence before this Court, $125 per hour is indeed the reasonable rate for the services of each of plaintiffs' lawyers throughout the relevant period. That figure will be used in calculating the lodestar amount.

### Time

Neither side offers anything to alter the view stated in Opinion 2. Plaintiffs' Supp. Resp. 6 n. 1 says only this:

This [414 hour figure, see Opinion 2 at 671–72] is based on the Court's reduction of 75 hours; however, Plaintiffs' counsel do not agree with the Court's determina-

tion that these hours were unnecessary and duplicitive [sic], and thus not properly compensable.

City's Response 1–2 suggests, without any real support, an across-the-board percentage cut.

It has been enough for this Court to cull through the time records once to impose the reduction it has already reflected in Opinion 2. No further effort at fine tuning would have any better assurance of validity, so the 414 hour figure will stand.

### Reasonable Fee Calculation

In lodestar terms, then, plaintiffs are entitled to $51,750 ($125 × 414). Should that figure be modified by reason of plaintiffs' contingent fee agreement with their lawyers? Plaintiffs' Supp.Resp. 5 n. 2 says our Court of Appeals opinion in *Hagge v. Bauer*, 827 F.2d 101, 110–12 (7th Cir.1987), referred to in Opinion 2 at 672, "is in direct conflict with *Rivera*, 106 S.Ct. at 2697, N. 11."[2] This Court does not agree with that evaluation, but in any event it will adhere to as recent an authority as *Hagge*, which by its terms specifically follows and applies *Rivera*. This opinion will therefore continue to conform to the *Hagge* directive "that the contingent fee arrangement should carry considerable evidentiary significance in ascertaining a reasonable fee award" (827 F.2d at 111).

More to the point, however, plaintiffs advance an important reason for not allowing the contingent fee agreement to *control* here (as contrasted with "carry[ing] considerable evidentiary significance").[3] Their counsel had to undertake

---

1. Opinion 2 at 672 n. 2 states the truism that "lawyers are not necessarily fungible." Without intending to deprecate the quality of plaintiffs' counsel here, the plaintiff's lawyer in *Strama* had a particularly impressive set of credentials and had handled both *Strama* and other prior litigation before this Court with a particularly high degree of competence.

2. That reference is to *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). As such, it is really obscure, because that footnote deals only with one facet of the matter. What is more important for current purposes is that *Hagge*, 827 F.2d at 111–

12 recognizes the tension between *Rivera*'s "emphasis on lodestar amounts" and a "straight contingency fee analysis," but then concludes by defining the proper role that contingent fee arrangements should play in determining reasonable fees.

3. Plaintiffs' Supp.Resp. 4 also makes an argument their counsel had to know was frivolous. They point to a *second* contingent fee contract, one entered into between plaintiffs and their lawyers July 15, 1987 (*after* the Rule 68 offer and acceptance had taken place and *after* City had attempted to restrict the $71,000 check so that plaintiffs could not cash the check without

entirely unanticipated efforts—separate and independent enforcement proceedings —to collect the $71,000 judgment after it had been entered under Rule 68. In the evaluation of a reasonable fee, those efforts should be viewed as separately compensable, rather than as a free throw-in as part of the original assignment to handle the case itself. This Court therefore does not view the contingent fee calculation of $47,333 [4] as somehow reducing the fee award to plaintiffs from the higher lodestar figure, which embraces plaintiffs' counsel's enforcement efforts as well as their services preceding the judgment.

#### Conclusion

Plaintiffs are awarded the sum of $51,750 as attorney's fees, plus statutory costs. City is ordered to pay that amount to plaintiffs on or before May 20, 1988.

giving up their entire claim for attorney's fees). *At that point plaintiffs and their counsel agreed:*

> 1. The firm of Freedman & Bornstein will agree to represent the individuals signing below for $1.00, and statutory attorneys' fees if awarded by the Court or agreed to in settlement.

*That agreement, entered into (by definition) after* all the services in the litigation leading up to the $71,000 judgment had already been rendered, really has no probative force under the circumstances. As Opinion at 5 reflects, the original retainer contracts between plaintiffs and their lawyers—contracts that were in force throughout the handling of the lawsuit to and including the time of entry of the Rule 68 $71,000 judgment—called for a fee of 40% of whatever amount might be recovered from City. Certainly the later post-judgment agreement, as quoted in this footnote, does not lend itself to the reductio ad absurdum contention advanced by plaintiffs.

4. City's lawyers cavil at this Court's use of the grossing-up concept in calculating the contingent fee under plaintiffs' agreement with their lawyers. Though City's counsel are correct in saying that concept has not been applied in other reported cases, Opinion 2 at 5–6 & n. 4 pointed out the issue has never really been looked at by the courts. But the result is plainly the only correct one. Anyone—lawyer or layman—who speaks of a one-third contingency understands that means the client will receive twice as much as the lawyer from what the defendant is compelled to cough up. Anyone who speaks of a 50% contingency understands the lawyer will receive just as much as the client out of what the defendant pays. But in the context of a Section 1983 case (with its separate Section 1988 award to the client), rather than the garden-variety tort case with a single-sum recovery from the defendant, those common sense meanings of contingency arrangements are fulfilled only by grossing up. In City's universe it would take a *100%* contingent fee arrangement for the civil rights lawyer to get just as much of what the civil rights defendant pays as does the civil rights plaintiff. Nobody talks that way.